Thank you, your honor. May it please the court. Jessica Garland for the plaintiffs. If I may, I'd like to reserve three minutes. Thank you. The district courts held that there's not a genuine dispute of material fact as to whether Mr. Blankenship, Mr. Goss, and Mr. Campbell are qualified individuals. That was error because the courts assumed that the workers could have had a change in vision since passing a prior test. But Union Pacific doesn't defend this reasoning because it repeatedly asserted to the contrary that the plaintiffs have had no vision change. Instead, Union Pacific asserts that the workers are not qualified because they did not pursue remedies with the FRA and do not hold a certification from the railroad. But this court's precedents in Rohr v. Salt River, Carpenter v. Manetta, and Bates v. UPS foreclosed both arguments. I'll begin by explaining why the workers were correct and not attempting to exhaust the FRA dispute resolution procedures before filing this suit. Although, as we noted in our brief, the exhaustion argument is waived, it's also wrong on the merits. As this court made clear in Wong v. Reno, there is no requirement to exhaust if an agency lacks the authority to grant the type of relief requested. And in Carpenter v. Manetta, this court held that the FRA cannot provide a remedy for a labor dispute. In that case, the plaintiff failed a stimulator-based skills test and was denied certification. It requested that he be retested and certified, and it pursued all three levels of FRA remedies in pursuing that relief. But the FRA administrator held that it had no power to provide either remedy. As the FRA administrator explained, that's because railroads have the singular authority to create their own remedies for incorrect denials of certification. And this court affirmed. Counsel, there is an administrative process for certification decisions by the railroad, and that can be reviewed through an administrative agency. Do you see the regulations as allowing the agency to opine or weigh in on the validity of a field test, like a light cannon test? Could the agency say, we agree with you, the light cannon test is too imperfect and should not be used? All that the agency can say is that that test doesn't satisfy our regulations. It can't say that it violates the ADA, and it can't say you have to use a non-discriminatory test. The same dispute regulations that issue in Carpenter v. Minetta, 49 CFR 240, apply here. And so that's what this court understood those regulations as limiting the FRA's capability. But this court was clear that although railroad employees wrongly denied engineering certification cannot get that certification from the FRA, they're not left without any remedy. They can seek relief through a statute specifically addressed towards labor disputes. And that's exactly what the plaintiffs did here. Could they challenge the validity of the FRA test otherwise through the administrative process, even absent from ADA type claims or discrimination type claims? Just to be clear, it's not the FRA test. The light cannon test was an in-house proprietary test that Union Pacific itself made up. The FRA... But it was approved by the FRA. The FRA allows the railroad to choose its test. Now, you're saying that you're, as I understand it, making an as-applied challenge here to the test itself, saying Blankenship and, I guess, Donahue have vision, right? They didn't pass the test. So isn't it a determinative issue whether they passed the test or whether they didn't pass the test? Because this is what the FRA allows the railroad to use as a test? Well, the light cannon test is not a valid test. So it does not abide by the FRA regulations. And Union Pacific hasn't shown that it went through the proper procedures to get it approved by the FRA. And it's... But the FRA allows the railroad to choose its test, correct? To use a light cannon test, correct? It provides some guidelines. It says the test must be valid, reliable, and comparable. Now let me ask you this. Did you submit on your motion summary judgment any expert testimony as to the unreliability of the light cannon test? Yes, we cited Dr. Rabin and Dr. Ivan's findings. Those are two experts that Union Pacific hired, and they found that the test was not valid. They specifically found that the test had over a 25% false fail rate. And we quoted them as recognizing that the test was, quote, as administered was not valid because of the high failure rate of color vision normal individuals. Again, that's not our experts. That's Union Pacific's own experts. And... Hey, counsel, can I ask a question? This is how I read the statute. The statute... Yes, the statute. First of all, there is a separate provision under which Union Pacific could have submitted the light cannon for FRA approval, right? Yes. They did not do that, right? There is no evidence in the record showing they did that, yes. Okay. Then the statute, subsection H, says except as provided in paragraph J of this section, each person shall have the visual acuity that meets or exceeds the following thresholds. And it's here where they talk about the... What appears in appendix D? Yes. And then subsection J says, a person not meeting the thresholds in paragraph H and I of this section shall, which to me sounds mandatory, upon request, be subject to further medical evaluation by the railroad's medical examiner. And I assume this is what Judge Bea is mentioning when he says that they can do that. They can have their own medical examiner do that. Determine the person's ability to safely perform as a conductor. So they're entitled to the second test. And presumably that test is the one that needs to be, what is it? Clear, reliable, and comparable, right? Valid, yes. That's what you're challenging here, that it's not clear, reliable, and comparable to one of the tests. Now they could have administered another test that appears in appendix D and apparently those are approved by the FRA, but they didn't do that. They had their own test. Is there evidence that that test, what you're contesting is that that test doesn't meet the standards of the FRA and thereby discriminates against colorblind people. It eliminates more people than other people. And these people are disabled people because they're colorblind, I guess. Is that how this argument goes? Because I didn't see the brief from Union Pacific to address any of the statutory or regulatory acts other than arguing about jurisdiction. We can't decide this case. But they didn't respond to this argument that he's entitled to a valid second test. He's still entitled to a valid second test. Yes, we agree, Your Honor. Of course, as we explained in the briefing, the jurisdictional argument is foreclosed by the Supreme Court's decision last summer in McLaughlin. I'm happy to address it, although I think it's quite clearly foreclosed. And I also note that Union Pacific didn't grapple with this court's decision in Roar v. Salt River. Union Pacific asserts that our would force them in between the rock of FRA safety regulations and the hard place of ADA liability. But this court in Roar v. Salt River explains that's not the case. When an agency gives company-wide discretion in order to create their own test, that company has to create a test that both satisfies the safety regulations and the ADA as long as it's possible to do so. Here, because they were allowed to create whatever field test that they wanted to, as long as it satisfied the FRA regulations, they had the discretion to make one that also satisfied the ADA. And I want to note the issue here isn't that the light cannon test is too safe. It's that it's too arbitrary. And kicking out a fourth of the individuals who have total vision ability to see railroad signs, it's not ensuring that the railroads are safer. It's just being discriminatory for no reason. So let me ask this. Both of the district courts ultimately resolved for a number of the plaintiffs that they had not made out a prima facie case because there was no evidence in the record that those plaintiffs could satisfy a different test or any type of validly approved test. And the only, I think, exception to that seems to me to be Donahue, because Mr. Donahue had gone and gotten a private doctor to test him for Ishihara. And I think he approved there. So he's in a little bit of a different place than the other plaintiffs. But why are the district courts incorrect in finding no genuine dispute of material fact over the fact that there is no recent test that would establish that they, a tribal dispute that they do have vision abilities? Starting with Mr. Blankenship, Union Pacific itself asserted as a fact that he, quote, suffers from no vision impairment and, quote, has no color vision deficiencies. This is at ER 402 and 424. And on page 31, footnote 7 of their answering brief, they say he, quote, does not have an actual disability. So even Union Pacific is saying he has perfect color vision. That's also demonstrated by the fact that he passed color vision tests in the past, including the Ishihara test and Union Pacific's prior field test. And Union Pacific asserts again and again that he, like all the plaintiffs, have never had a change in color vision. But I guess my concern with that argument and what didn't seem persuasive to the district courts is that there is this three year certification time period. And so whatever may have happened in prior to those three years, you know, someone could pass the test year after year or, you know, period after period. But if you're not passing some valid tests during the relevant period of time, you cannot be certified. So why does that create a genuine dispute if there's nothing within the relevant time period that suggests that they could pass such a test? So the evidence is that they did pass a test, a valid test in the past, and their vision hasn't changed again. And so as the cases we cited note, there's generally presumption if you have no change and you pass the test in the past, you could pass it again. The problem is they were never given a valid test again to show they could pass it. And as this court and all the civil rights cases we cited in the brief show, a company can't prevent someone from challenging a certification exam by refusing to give them a non-discriminatory certification exam and saying, because you've never challenged the exam, you can't show you're qualified. But let's give Mr. Donahue as an example. He walked in and he got a private exam, you know, because the field test is not a requirement as a second test. It could be an ophthalmological exam as well. And so he went in and he presented evidence that he might actually be vision compliant within the relevant time period. And so he presents a little bit of a different situation than I'm going to ask opposing counsel about. But why couldn't other plaintiffs have done the same in order to establish a tribal issue? Or is that, in your view, just not something that plaintiffs should be required to do in order to create a genuine dispute for trial? That's what this court held in EEOC v. BNSF at page 918. It specifically held that, quote, allowing employers to place the burden on people with perceived impairments to pay for follow-up tests would subvert the goal of the ADA to ensure that those with disabilities have equality of opportunity. So requiring these individuals who have been terminated, have not been paid anymore, to go and pay out of pocket for multiple expensive tests. And that was about the MRI test? Exactly. But the same point applies here to requiring individuals who've been fired, they have no money, they have to go now pay out of pocket to prove that they have been individuals with perceived impairments. And they don't need to do that, both because that's what this court held and because there's enough evidence to get to a jury. The only question is, is their dispute a material fact? If they were given a valid test, could they pass it? They don't need to have the certification itself. That's what this court held on Bonken Bates. They just need to show the ability to do the job. The fact that they were able to do the job, passed the certification test, had sufficient color vision, there's no dispute their color vision has never changed since having sufficient color vision, is enough to create a dispute a material fact as to whether they could pass it again. Can I, before you sit down, and I'll let you run over a little bit, you rely on Bates for the proposition that the administration of this test is purposefully discriminatory and should not apply, that there should not be a burden-shifting McDonnell-Douglas framework. It seems like this is a very different situation than what we've seen in other cases like Albertson's. This is because the regulations require the railway to conduct a second test of some kind, but it gives the railroad some discretion as to what to choose. But this is a heavily regulated activity though, right? I mean, the railroads are, Congress wanted to ensure that conductors had to be certified before they could be locomotive operators and other things. So help me situate why Bates is applicable here as a purely discretionary test versus something else that's a little bit more mandatory. I think three points. First, we're not asking that they be certified. We're asking for damages under the ADA. We don't dispute that they cannot be certified unless the railroad certifies them. That's what the FRA says. So this is not undermining the safety rules. And then Bates recognizes that a railroad can have a business necessity defense to say it wasn't a violation of the ADA because we need this specific test because otherwise we can't ensure safety. But the difference in Bates, and I'll let you continue in a second, is that in Bates, there was a regulation that said we're going to test drivers of certain trucks over a certain weight for deafness. But UPS decided to go and do that for all drivers. Whereas here, these certification requirements are for all conductors. It's not a subset of them. So that's why it seems it's not quite as discretionary as the facts presented in Bates. I think Roar versus Salt River is on all fours right here. At issue there was an OSHA safety requirement that any welder needed to have a respiratory health certification. And it had to do that annually. But it told companies that they had discretion to figure out exactly what was part of that medical evaluation to have the health certification. And this is at page 863 in Roar versus Salt River. And the court there explained this is not like Albertson's because the agency is giving a discretion on how to meet a certain safety standard. And so because the company can craft within that safety standard, they could use their discretion to be discriminatory, or they could use their discretion not to be discriminatory. So an individual is able to challenge a test that's discretionary and discriminatory because the company has that ability to choose not to be discriminatory. And that's what is the distinguishing factor from what's going on in Albertson's. It's this discretion. And a company can't hide behind discretion to inflict discriminatory tests on individuals. Okay. We'll give you a little time Thank you. Perfect. Thank you. May it please the court. My name is Scott Moore on behalf of the appellant, Union Pacific Railroad Company, along with Michael Westheimer, who was on the brief in Mr. Donahue's case. This court should follow the well-reasoned opinion from the Fifth Circuit of Turner versus BNSF Railway, in which BNSF did exactly what Union Pacific did here, and the Fifth Circuit addressed the exact issue that's before this court. And that is, when a conductor or locomotive engineer brings an ADA claim, they must first exhaust their wide-ranging appeal process through the FRA, which includes an administrative hearing, a full ALJ hearing, and the administrator's decision after to decide whether a certification has been wrongfully decided. And I would like to get right into the questions Judge Wardlaw asked. Well, before we do that, Mr. Moore, how is there an exhaustion requirement if the regulations say employee may file a petition with the FRA? Well, again, it is in order that the Congress delegated to the Department of Transportation, which of course delegated to the sub-agency of the Federal Railroad Administration, the authority to regulate certifications of locomotive engineers and conductors for the safety of the railroad and the public. And that is, quite frankly, an exclusive remedy, because what they're challenging here is a denial of certification. And that certification process has a robust appeal process through the FRA that these locomotive engineers and conductors can In fact, in the record, you'll see two decisions, one from Pendergraf and one Marlowe, where they actually appealed the denial of Unipacific's denial of their certification based upon the color vision field test, that the locomotive board in one case and conductor board in the other case held that Unipacific properly denied recertification and that the color vision field test met the requirements of the regulation. But I mean, I go back to the language of the regulation itself, which says employee may, and then you have a statutory provision, 49 U.S.C. section 20135D, an individual denied a license or certification shall be entitled to a hearing under 20103E of this title to decide whether the license has been properly denied or conditioned. That's permissive language. That's giving a person who's been denied certification an avenue of relief. I'm straining to find how that is mandatory that someone would have to file with the agency in order to challenge a certification decision in the absence of, you know, let's say they think they have a viable ADA claim. Sure. Because of the uniqueness of the ADA. The ADA, unlike any other employment discrimination statute, requires that an individual show that they're qualified to perform the job. The plaintiffs in this case admit it is an essential function of the job to have that certification and satisfy those standards. Thus, very uniquely under the ADA, they must show they meet those preliminary qualification requirements before they proceed with their claim, no matter what their claim is. And for that, and that's why Turner determined that because of the importance of the certification and the fact the FRA gives a railroad medical examiner the discretion to make that determination, which happened here. Judge Wardlaw, I know you mentioned Union Pacific. What happened here is the railroad medical examiner, Dr. John Holland, and you can see this at SER 110 in the record, issued the denial of certification. And it is that individual under the regulations that is required to make the determination. And that's why in Turner, the decision was- Can I just probe that for a second, though? Sure. What do you make of the language in the statute that says they're entitled, mandatory second test, they're entitled to? Yes. And what's being challenged here is the validity of the second test that was offered. And so it seems rather circular, the argument that the medical examiner appropriately applied a second test that was invalid because it was discriminatory, and then relied on the results of that test to deny the certification. And now you come back and say, so he can't be qualified when it's the very test that he's challenging. It's not the actual denial of certification. It's the denial of a valid second test to which he's entitled under the statute. Well, that would be true if this wasn't mandated by FRA safety regulations. In order for this court to decide that this case should go in front of a jury, you would have to disregard 49 CFR 242117C, which requires the medical examiner to make the determination. And a railroad must have a medical examiner certificate on file for conductors and cannot allow them to work without that certificate. Indeed, that goes right to our argument why exhaustion is important. That goes to the denial of certification. They're claiming damages because they weren't given a proper test. And apparently there's been no change or anything, and they haven't been offered a valid test that they allege. And they put in a lot of facts that would say there's a genuine issue of practice whether he could, if given a valid non-discriminatory test—I'm thinking of Blankenship now—but given a valid non-discriminatory test, he would have passed the test and would have been certified. Well, I'll say two things on that. Number one, the secondary field test is pursuant to federal regulations, and the FRA has the ability to review that test and decide that it's not reliable, valid. Everything that they're asking this court to do is to determine what the FRA regulations mean, and secondly, what the FRA would think of this test. That's what it needs to satisfy here. This is not a Bates case where they're acting above or outside of the regulations. Everything is within the regulations. I mean, that would make more sense if this were Ishihara, but this is a test that the railway, that Union Pacific chose, adopted the light cannon. The regulations aren't saying you must apply the light cannon test. So why isn't that a discretionary decision that would fit within Bates? There is some limited discretion, but it's still within the confines of what the FRA—it has to meet the FRA standards that are still out there. So yes, there is some discretion. And is that the guidance for the best practices? The best practices and the ability to appeal that this test doesn't measure what the FRA wanted it to measure, and that's important. The statute and the regulatory structure from the FRA gives that discretion to the Railroad Medical Examiner for a reason, and that is because these people have already passed the—excuse me, already failed the scientific Ishihara test. They're given a second chance to nonetheless prove that they can safely operate the locomotive. And the FRA believed that the Railroad Medical Examiner, just like under any other DOT standard, whether it be, for example, the Harris case, the PAM transport case in the A circuit with regard to FMCSA regulations, it's the same issue. The Railroad Medical Examiner is given the discretion there. And so this court would have to say, disregard what the Railroad Medical Examiner said, and you don't have to have a certificate. Union Pacific, you have to put them back, even if they're requesting damages. But this is not—it's not just a medical examiner issue. I think plaintiffs are arguing that the light cannon test is itself fatally defective, right? And so my question to you would be, let's suppose—we don't have to use light cannon as an example. Let's suppose a railway does choose a field division test that is completely flawed. What recourse would a person who was decertified on the basis of that flawed test have to challenge the propriety of that test, its use for a certification decision? They would go to the FRA, and the FRA has the absolute ability and authority to order that Union Pacific has unlawfully, under their regulations, denied the certification. At that point, those statutes are parallel. They can bring their—they've established at that point that their—Union Pacific withheld the certification unlawfully under the FRA regulations. They've met that requirement and can proceed with their ADA claim. But that certification, everything they're asking—and you can read it in their brief—is for you to determine what the FRA would have said about this particular regulation. And so in that case—and ROAR is completely different. If we look at the ROAR case, that was an OSHA regulation that had no standards, that had no frequency with regard to when the employer needed to do the test, had no—nothing to follow, and there's no indication of any appeal rights. ROAR is completely distinguishable from this case. In Albertson's—the Supreme Court recognized that Congress stated in certain instances when it comes to the Department of Transportation, these regulations may be inconsistent with the ADA. And—but Congress has given the Department of Transportation the authority to regulate railroad safety because they're in the best position to do it. I can't imagine that the Congress would ever wanted a jury of six people to determine whether a certification was properly granted or not. And that's what they're asking for here. Which goes to the second point with regard to evidence that they're able to do it. What they say is—yes, Your Honor. Hello. Sorry. You repeatedly characterize this as a challenge to the denial of certification. Yes. Okay. But that's not what plaintiffs are arguing. They're arguing they were—they weren't given a proper test in order to decide whether they should be certified. And what I hear you arguing is that they have no recourse to protection under the ADA case unless they challenge the use of the test before the FRA. That's what—that's what you're arguing. That's correct. And that's exactly what Turner v. BNSF Railway said. That they are— You don't have to—we're not bound by that case. I understand that, Your Honor. Absolutely. We're trying to get down to the—you know, try to identify—we're trying to identify the arguments that everybody's making and trying to read the statute and apply it here. So, I mean, honestly, your brief relied entirely on this Turner case. And I think you need to address the statute itself, not on what the Fifth Circuit did. Yeah. And I believe we have in the sense, Your Honor, that indeed the color vision field test, that there is no argument that Unipacific was operating under mandatory regulations that apply to this position and set forth a procedure that must be followed. Yes, there is some limited discretion, but they have a remedy to go to the FRA to make that determination first. If this was extra regulatory, I would understand where the court would be coming from because it here. But that leads to the second argument with regard to they haven't presented any evidence to show they could meet the standard in the first place. Again, Judge Marquez in the Blankenship case said very clearly they could have taken any of the tests, Judge Wardlaw, that you mentioned that are listed in the statute and shown it that way. They could have had an expert who is an ophthalmologist come in. And that's discovery, right? That's discovery that they were required to show a question of fact as to whether they could meet that. But your friend cited two doctors who were UP doctors who said there was a failure rate with the light cannon test. Why isn't that sufficient evidence to put to a jury? Because they still have to, on a triennial basis, demonstrate under the regulations that they meet the requirement. What they're saying is we relied on the, because my client passed the old UP test, that shows, and there was no change of vision, that shows that they can meet the requirements now. The problem with that is twofold. Number one is that it requires a demonstration every three years. But more importantly, the NTSB, after the Goodwill accident, said unequivocally, unequivocally that Union Pacific's previous test, and it does not accurately measure whether someone can distinguish color vision field, excuse me, color sight signals, and Union Pacific needs to replace that test. Unequivocally, they said that. And they said it was one probable cause in causing a head-on collision which killed three Union Pacific employees. To rely on that test would be completely administered Ishihara test, and he did pass that. So why doesn't that properly tee up a triable dispute as to whether he was vision qualified and can then go and challenge the validity of the light cannon test? Well, again, we would say that there's no information with regard to the validity of that test or how that test was administered. That's for trial, right? That's the genuine dispute, isn't it? But I would go back to, again, he's still challenging that certification requirement. Moreover, I want to answer, Judge Sanchez, your question about this case. This is not a facially discriminatory case. They only have a disparate treatment case. They don't have an accommodation or a disparate impact case here. This is a disparate treatment case, and because it was equally applied to everyone, maybe they were entitled to an accommodation, maybe they were entitled to a disparate impact, but they're saying they were treated less favorably than non-disabled individuals. They were not. In fact, everyone took the Ishihara test, and if you failed, they were given another opportunity to show that. That on its face cannot be a disparate treatment case. And so the district court in Donahue was correct in applying the McDonnell-Douglas standard and saying there was no pretext on intentional discrimination. Had they brought a reasonable accommodation claim, had they brought a disparate impact claim, maybe they could go forward with that. But it's undisputed that the only type of claim here is a disparate treatment case on the basis of disability. What about a claim that if the test is as flawed as it is and Union Pacific knows about its flaws, that the administration of that test could establish some basis for pretext, at least enough to take it to trial? Yeah. And first of all, it's a red herring. So I will say that we disagree with their interpretation of the record. The test that those two doctors look at was a precursor to the actual test that was given. That was a different test with a different device when Dr. Raven and Dr. Ivan did that. Secondly, the 25% failure rate they talk about were graduate students taking the exam who failed it the first time. And as the experiment said, they were unfamiliar with railroad colors, and that's why they feel that when they took it a second time, they all passed 100%. And Blankenship did take the test twice. So that's a red herring. We certainly don't agree that it's a we think it's a valid test. And that's upheld by the two decisions, Pendergraf and Marlowe from the FRA that said it complies with the FRA regulations. Union Pacific was acting within the regulatory scope the entire time. And for that reason, we believe this court should determine that they have an exhaustion requirement before they go forward to show they're qualified before they can go forward with the ADA claim. Okay, I see I'm out of time, Your Honor. Yes, thank you. Thank you. Thank you for your comments. Council will give you a couple minutes for rebuttal. Microphone. Thank you. I'd just like to make three points. First, my friend on the other side doesn't deal with this court's precedent in Carpenter v. Mineta, which makes clear the FRA cannot require a railroad to give someone a certification or say that someone is wrongly denied certification. All they can say is that a specific test doesn't meet their standards. And in Carpenter v. Mineta, although the individual went through all three phases of FRA review to exhaust those remedies, that took six years. And then the individual had to go still and file under the statute in order to get the actual relief that he sought. The EEOC, however, has a 300-day statute of limitation. So if an individual was required to spend six years exhausting procedures that cannot give the remedy they seek, indeed, it can't even get a ruling from the FRA saying that they are qualified, that would prevent them from actually ever succeeding under the ADA. I'd also like to explain why we have made out a genuine dispute of material fact about whether all four individuals are qualified. The prior test that Union Pacific itself told the NTSB, that's page 22 of the NTSB report, complied with FRA regulations, was sufficient. And Union Pacific argues that the NTSB questions the validity of that test. But the FRA chose not to adopt that finding. And it's the FRA, not the NTSB, that has the authority to approve or disapprove of a test. As the FRA explained in its best practices report, the issue with a test before the Goodwill accident was that it wasn't properly applied. That engineer wasn't even given testing on all 10 of the signals. He was only given testing on half of the signals. So the problem was with how it was applied, not that it was an invalid test. Finally, I note that in Marlow and Pendergrass, those FRA rulings were not about the validity of the test in any precedential way because they were not, the FRA rulings were not given any of the evidence that we now have from Union Pacific's own experts saying the tests are invalid. Thank you. Thank you, counsel. Thank you both for your helpful arguments. The matter will stand submitted.
judges: WARDLAW, BEA, SANCHEZ